IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| FREDRICAS MARCAZ JILES, #194793 | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | CIVIL NO. 2:15-cv-511-MHT |
| DEWAYNE ESTES, et al., | ) ) | |
| Respondents. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Petitioner Fredricas Marcaz Jiles ("Jiles"), an inmate of the Alabama Department of Corrections, filed this petition for habeas corpus relief pursuant to 28 U.S.C. § 2254, challenging his conviction and sentence in the Circuit Court for Montgomery County, Alabama, on one count of manslaughter. Doc. No. 1. For the following reasons, the court recommends that the petition be denied and the case dismissed.

**I. PROCEDURAL HISTORY**

Jiles was charged with the murder of Willie Harris ("Harris"). Doc. No. 8-1, at 7. Jiles maintained that he was acting in self-defense when he shot Harris. Doc. No. 8-8, at 158-49; Doc. No. 11, at 2-3. A jury convicted Jiles of one count of manslaughter. Doc. No. 8-1, at 27. He was sentenced to life in prison as a habitual felony offender. Doc. No. 8-11, at 1. He appealed, and the Alabama Court of Criminal Appeals affirmed the judgment and thereafter overruled his application for rehearing. Doc. Nos. 8-11, 8-12. Jiles

unsuccessfully petitioned for a writ of certiorari to the Alabama Supreme Court, and a certificate of judgment issued on January 13, 2012.  Doc. Nos. 8-13, 8-14.

Jiles sought postconviction relief under Alabama Rule of Criminal Procedure 32. Doc. No. 8-15, at 9-31.  The Circuit Court denied the application.  Doc. No. 8-15, at 49-50.  He appealed.  The Alabama Court of Criminal Appeals affirmed, and it then denied his request for rehearing.  Doc. Nos. 8-19, 8-20.  The Alabama Supreme Court denied Jiles's petition for a writ of certiorari and issued the certificate of judgment against him on May 15, 2015.  Doc. No. 8-21, 8-22.

## II. HABEAS PETITION

Jiles submitted this § 2254 petition on July 4, 2015. *See Houston v. Lack*, 487 U.S. 266, 271-72 (1988) (discussing the "mailbox rule"); Rule 3(d) of the Rules Governing Section 2254 Cases in the U.S. District Courts (incorporating the mailbox rule for habeas petitions); Doc. No. 1, at 15.  Respondents do not argue Jiles's petition was untimely filed.

Jiles initially raised six claims for habeas relief, one of which has two parts:

1. The trial court erred when it overruled Jiles's *Batson*[1] challenge:
   a. Based on a pattern of disparate treatment through peremptory strikes, and
   b. Based on improper use of information from the National Crime Information Center ("NCIC") reports on potential jurors' criminal history. Doc. No. 1, at 16-17.
2. The trial court erred when it rejected Jiles's motion to suppress based on *Edwards v. Arizona*.[2]  *Id.* at 17.
3. The evidence was insufficient to convict Jiles of manslaughter.  *Id.* at 18.
4. Trial counsel provided ineffective assistance by failing to raise and preserve a claim that the trial court should have instructed the jury on the "stand your ground" law of self-defense. *Id.* at 18-19.

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).
[2] *Edwards v. Arizona*, 451 U.S. 477 (1981).

5. Trial counsel provided ineffective assistance by failing to raise a proper *Batson* challenge. *Id.* at 19-20.

6. Trial counsel provided ineffective assistance by failing to object to a lesser-included-offense instruction of manslaughter. *Id.* at 20-21.

The court allowed Jiles to amend his petition to request permission to present evidence from Marvin Gaston, a witness not presented at trial. Doc. No. 11, at 2; Doc. No. 13. Respondents filed an answer regarding the initial claims and a supplemental answer regarding the claim of new evidence. Doc. Nos. 8, 15. Respondents argued that, at the time of their response on October 6, 2015, Jiles could return to state court to litigate the claim of new evidence, but they also argued this federal court could dismiss the new claim as meritless regardless whether Jiles exhausted the claim. Doc. No. 15, at 3-7. The court granted Jiles an opportunity to respond to the supplemental answer. Doc. No. 16. Jiles did not respond.

The court advised Jiles of the constraints on federal courts to grant habeas relief, including procedural default of federal claims, and the ways to overcome default. Doc. No. 10. After reviewing the § 2254 petition, Respondents' answers, the other filings, the state court record, and applicable federal law, the court concludes that no evidentiary hearing is required, and the petition is due to be denied in accordance with the provisions of Rule 8(a), Rules Governing Section 2254 Cases in United States District Courts.

### III. PROCEDURALLY DEFAULTED CLAIMS

Respondents argue that Jiles procedurally defaulted the following claims:  Claim 1(b) regarding the *Batson* issue based on NCIC reports, Claim 3 regarding sufficiency of the evidence, Claim 5 regarding counsel's failure to raise the NCIC issue, and Claim 6

regarding the lesser-included instruction for manslaughter. Doc. No. 8, at 10-13. Respondents further argue that Jiles never presented his claim regarding evidence from a new witness to the state courts, and it is meritless. Doc. No. 15, at 3-7.

## A. Exhaustion and Default Principles

The procedural default doctrine is closely related to the exhaustion requirement in § 2254 cases. To preserve a federal claim for habeas review, principles of exhaustion require a petitioner to present the federal claim and facts supporting it to the state's highest court, either on direct appeal or on collateral appeal through postconviction proceedings. *See Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (holding exhaustion principles apply to state postconviction proceedings as well as direct appeal); *see also Gray v. Netherland*, 518 U.S. 152, 162-63 (1996). A petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including review by the state's court of last resort, even if review in that court is discretionary. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Pruitt*, 348 F.3d at 1359. Doing so ensures the state courts have the first opportunity to apply controlling law to their case and petitioner's claim. *See Duncan v. Walker*, 533 U.S. 167, 179 (2001) ("The exhaustion rule promotes comity in that 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.'" (further quotation marks and citations omitted)).

Under procedural default principles, federal habeas review is unavailable if the state court decision was made on a state law ground that is independent of the federal question

4

and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To rely on a state court's procedural bar of a federal claim, three conditions must be met: (1) the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim, (2) the state court decision must rest entirely on state law grounds and not be intertwined with an interpretation of federal law, and (3) the state procedural rule must be firmly established and regularly followed. *Ward v. Hall*, 592 F.3d 1144, 1156-57 (11th Cir. 2010) (citations omitted); *see also id*. at 1156 n.5 (noting the caveat that, "'Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.'") (further citations omitted)).  If a state court plainly holds that a claim is procedurally barred, then this federal court may not review the claim even if the state court also rejected the federal claim on the merits in the alternative.  *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" when the adequate and independent state ground "is a sufficient basis for the state court's judgment").  If a petitioner did not present a claim to the highest state court but would now be unable to present the claim in state court because of a state rule, such as requirements on time limits for filing, the petitioner "meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." *Coleman*, 501 U.S. at 732.  But the petitioner has "procedurally defaulted" the federal claim under an adequate and independent state rule, that is, the timely filing requirements.  *See id.* at 735 n.1 ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner

would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,] . . . there is a procedural default for purposes of federal habeas.") (citations omitted); *see also Gray*, 518 U.S. at 161-62 (where state court remedies are no longer available because petitioner failed to file a direct appeal or initiate a timely state postconviction action, petitioner has procedurally defaulted on his claims and is generally barred from asserting claims in a federal habeas proceeding); *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) (if petitioner fails to properly exhaust claims in state court and is barred from raising claims in state court by firmly established and regularly followed state procedural rules, such claims are procedurally defaulted).

## B.  Procedurally Defaulted Claims

In Claim 1(b), Jiles argues the trial court improperly overruled his *Batson* claim because the prosecution relied on hearsay evidence from the NCIC reports regarding the criminal history of potential jurors.  Doc. No. 1, at 17.  The Alabama Court of Criminal Appeals refused to address this claim because Jiles did not raise the issue at trial but rather raised it for the first time in his motion for new trial.  Doc. No. 8-11, at 6. Under Alabama law, "appellate courts will not review questions not decided by the trial court."  *Id.* (quotation marks and citations omitted). "Because Jiles did not raise this claim in a timely manner," it held, "it is not preserved for our review."  *Id.*  Consequently, Claim 1(b) is procedurally defaulted pursuant to an adequate and independent state court ground.  *See Coleman*, 501 U.S. at 729.

In Claim 3, Jiles argues the evidence was insufficient to convict him of manslaughter.  Jiles raised this claim on direct appeal, but the Court of Criminal Appeals

held that Jiles failed to preserve the claim by not raising it in his motion for judgment of acquittal at trial, as required by Alabama law.  Doc. No. 8-11, at 11-12 (citations to Alabama precedent omitted).  The Court of Criminal Appeals went on to explain that even if Jiles preserved the claim, it was without merit.  *Id.* at 12-14.  Even though the state court addressed the merits of this claim, it is treated as procedurally defaulted for federal habeas purposes.  *See Harris*, 489 U.S. at 264 n.10.

In Claim 5, Jiles argues that his attorney performed ineffectively when raising the *Batson* claim.  Doc. No. 1, at 20.  Jiles states, "there is no fair cross-section *Batson* issue no[r] is there a racial composition *Batson* issue, but instead that the State engaged in disparate treatment amongst Blacks and White jurors, and that trial co[u]nsel failed to properly object to this *Batson* issue, and failed to properly plead specific facts to the court in support of this issue." *Id.* (alterations added). Jiles raised counsel's performance regarding the *Batson* claim in his postconviction application, but he did not pursue the issue on appeal by including it in his brief. Doc. No. 8-19, at 2.  Similarly, in Claim 6, Jiles argues his counsel was ineffective in failing to object to a lesser-included jury instruction for manslaughter, but he did not include the issue in his postconviction appellate brief. Doc. No. 1, at 20-21; Doc. No. 8-19, at 2.  The Court of Criminal Appeals deemed both issues abandoned under Alabama law and did not consider them. Doc. No. 8-19, at 2 (citing Ala. R. App. P. 45B, and quoting *Brownless v. State*, 666 So.2d 91, 93 (Ala. Crim. App. 1995) ("We will not review issues not listed and argued in brief."). Claims 5 and 6 are therefore procedurally defaulted pursuant to an adequate and independent state court ground.  *See Coleman*, 501 U.S. at 729.

In his amendment submitted on September 11, 2015, Jiles states he did not know that the witness named "Marvin Gaston" who was present at trial but did not testify was not the same "Marvin Gaston" who witnessed the shooting.[3]  Doc. No. 11, at 2.  Jiles avers that while in prison, sometime after August 6, 2015, he spoke with Marvin Gaston, who said he was present at the shooting and was subpoenaed to testify at trial, but the private investigator mistakenly picked up his uncle, who is also named "Marvin Gaston," and took him to trial. Doc. No. 11-2, at 1.  Jiles states that if Gaston had testified, he "would have established my defense a[t] trial that Willie Harris and his family were shooting at me, and I had to fire back to protect my life."  *Id.* at 2 (alteration added).  Jiles submits an affidavit from Gaston, who avers that his uncle is also named "Marvin Gaston."  Doc. No. 11-1, at 2.  Gaston avers he saw Jiles and Harris fighting over a gun; Gaston heard the gun go off; then he heard other shots fired; then he saw Jiles "up with his pistol, and started shooting back at them." *Id.* at 1-2.  He states that he "would have came to court, and told the Judge & Jury that [Jiles] had to defend himself, because everybody was shooting at him." *Id.* at 2.  Gaston avers the police took a recorded statement from him that was the same as his affidavit.  *Id.*  A freestanding claim of "actual innocence" is not a cognizable claim under § 2254, which provides relief for violations of federal law.  *See Herrera v. Collins*, 506 U.S. 390, 400 (1993).  At the time respondents filed their supplemental answer, they argued that Jiles had time to return to state court to present this evidence. Doc. No. 15, at 3-4.  That window, however, has since closed.  *See* Ala. R. Crim. P. 32.2(c) (petitioner can file for

---

[3] At trial, Jiles testified there were "about 15, 20 people" at the shooting, and one of them was Marvin Gaston.  Doc. No. 8-8, at 164.

relief based on claim of newly discovered evidence within six months from the date of discovery). Consequently, even assuming the claim is a cognizable habeas claim, the time for Jiles to raise the issue in state court has expired under Alabama state rules, and the court treats the issue as procedurally defaulted for federal habeas purposes. *Coleman*, 501 U.S. at 735 n.1.

### C. Exceptions to Procedurally Defaulted Claims

This court may reach the merits of Jiles's procedurally defaulted claims in two instances:

> First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. *See Murray v. Carrier*, 477 U.S. 478, 485 (1986); *[Wainwright v.]* Sykes, 433 U.S. [72], 87 [(1977)]. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Id.*; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002). Second, a federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice. *Murray*, 477 U.S. at 495-96. A "fundamental miscarriage of justice" occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent. *Id.*

*Henderson*, 353 F.3d at 892. The court afforded Jiles an opportunity to demonstrate the existence of cause for his failure to raise his defaulted claims in the state courts properly and prejudice resulting from this failure. Jiles responded only with his claim regarding new evidence. Jiles, therefore, provides no ground to establish cause for his failure to

comply with the state procedural rules, or any resulting prejudice from this Court's refusal to address Jiles's federal claims.

The court treats Jiles's claim of new evidence as an argument that this court must address his federal claims to correct a fundamental miscarriage of justice. The miscarriage of justice standard is directly linked to innocence.  *Schlup v. Delo*, 513 U.S. 298, 321 (1995). Innocence is not an independent claim; instead, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted.  *Id.* at 315. This exception applies where a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496; *Schlup*, 513 U.S. at 321. "[T]he *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell,* 547 U.S. 518, 538 (2006) (citations omitted). Thus, "[i]n the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of defaulted claims." *Id*. at 537.  "To establish actual innocence, [a habeas petitioner] must demonstrate that . . . 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley v. United States,* 523 U.S. 614, 623 (1998) (quoting *Schlup*, 513 U.S. at 327-28); *House,* 547 U.S. at 538.  In this context, Jiles must show constitutional error coupled with newly discovered evidence that was not presented at trial that would establish factual innocence rather than mere legal insufficiency. *Bousley*, 523 U.S. at 623-24*; Johnson v. Alabama,* 256 F.3d 1156, 1171 (11th Cir. 2001); *see also Schlup,* 513 U.S. at 324. The Court in *Schlup* observed that:

a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with *new reliable evidence* – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id.* at 324 (emphasis added).

Jiles submits evidence not presented at trial that Marvin Gaston saw others shooting at Jiles while Jiles was shooting in self-defense at them.  The evidence from Gaston, however, does not show "'it is more likely than not that no reasonable juror would have convicted'" Jiles.  *Schlup*, 513 U.S. at 327-28.  At trial, Jiles admitted that, after he and Harris struggled over the gun and it accidentally fired, Jiles drew his pistol and shot Harris.  Doc. No. 8-11, at 2-3.  Another witness testified that Jiles punched Harris in the face, pulled his gun, and then shot Harris.  Doc. No. 8-7, at 27-28; Doc. No. 8-11, at 2. Jiles insisted at trial that, after the gun went off accidentally, "everybody started shooting.  They were shooting from the porch and the side."  Doc. No. 8-8, at 183.  On direct examination, Jiles testified he then "upped my gun, and I started shooting.  I shot—me and Willie were face to face when I shot."  Doc. No. 8-8, at 158.  Jiles believed he shot Harris in the chest.  *Id.* at 159.  In fact, Harris was shot multiple times in the back and in the back of his thigh.  Doc. No. 8-11, at 3.  The bullet injuries were different sizes, and Jiles's defense was Harris was injured by the other weapons that were fired.  Doc. No. 8-8, at 233-36; Doc. No. 8-16, at 120.  Gaston avers, "[t]he gun went off, then I heard other shot[]s being fired.  I then seen [Jiles] up with his pistol, and started shooting back at them."  Doc. No. 11-1, at 2 (alterations added).  Gaston does not state who caused the other shots; he does not directly

contradict evidence that Jiles shot Harris first; and his statement does not provide an exculpatory reason why Jiles shot Harris first. Doc. No. 8-11, at 2-3. Jiles cannot demonstrate that he has new reliable evidence of factual innocence, and there is nothing in the record that suggests a miscarriage of justice will occur if the court does not reach the merits of his defaulted claims. Jiles simply presents no evidence nor suggests that any exists which could satisfy the difficult standard set forth in *Schlup*. Jiles's procedurally defaulted claims are, therefore, foreclosed from federal habeas review.

## IV. HABEAS REVIEW OF CLAIMS ON THE MERITS

Respondents admit Jiles preserved for federal review the following claims: Claim 1(a) regarding peremptory strikes, Claim 2 regarding *Edwards v. Arizona*, and Claim 4 regarding the stand your ground instruction. Doc. No. 8 at 23-30. For claims properly before a federal court, a writ of habeas corpus shall be granted only if the prior adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The Supreme Court has held that a state court decision is "contrary to" federal law under § 2254(d)(1) "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell*, 535 U.S. at 694. Under the "unreasonable application" standard, this Court may grant a writ only if the state court identified the correct governing federal legal principle but applied that principle to the facts of a petitioner's case in an objectively unreasonable way. *See Williams v. Taylor*, 529 U.S. 362, 411-13 (2000) (O'Connor, J., delivering the opinion of the Court with respect to Part II). "Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. *See Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). The reviewing court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "The state court decision must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citation omitted). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

As for the unreasonable determination of facts prong under § 2254(d)(2), the federal court "may not characterize these state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015) (citation omitted). "If [r]easonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination." *Id.* (quotation marks and citations omitted).

Factual issues made by a state court are presumed correct, and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Supreme Court has recognized there is a question about the relationship between § 2254(d)(2)'s "unreasonable determination of the facts" standard and § 2254(e)(1)'s presumption, but it has "not yet defined the precise relationship between [them.]" *Brumfield*, 135 S. Ct. at 2282 (quotation marks and citation omitted).  If a petitioner failed to develop the factual basis of a claim in state court, the federal court cannot hold an evidentiary hearing unless the petitioner shows "the claim relies on . . . a new rule of constitutional law, made retroactive . . . ; or . . . a factual predicate that could not have been previously discovered through the exercise of due diligence; and [] the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2). "Section 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief." *Cullen*, 131 S. Ct. at 1401.

14

Except for certain kinds of error that require automatic reversal, even when a state petitioner's federal rights are violated "relief is appropriate only if the prosecution cannot demonstrate harmlessness." *Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015). "Harmlessness" in the context of § 2254 means "the federal court has 'grave doubt about whether a trial error of federal law had "substantial and injurious effect or influence in determining the jury's verdict."'" *Id.* at 2197-98 (citation omitted). This standard, which is taken from *Brecht v. Abrahamson*, 507 U.S. 619 (1993), requires "more than a 'reasonable possibility' that the error was harmful." *Davis*, 135 S. Ct. at 2198 (quoting *Brecht*, 507 U.S. at 637); *cf. Chapman v. California*, 386 U.S. 18, 24 (1967) (standard for harmlessness on direct review from a state court to the U.S. Supreme Court is whether the error was "harmless beyond a reasonable doubt"). When a state court determines the harmlessness question, "the *Brecht* test subsumes the limitations imposed by AEDPA." *Davis*, 135 S. Ct. at 2199.

These strict limitations reflect that habeas relief is granted sparingly, reserved for "'extreme malfunctions in the state criminal justice systems'" and "not as a means of error correction." *Greene v. Fisher*, 565 U.S. 34, 37 (2011) (quoting *Harrington*, 562 U.S. at 102, and further quotation marks omitted). As the Supreme Court has reminded courts, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. . . . [Section 2254(d)] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." *Harrington*, 562 U.S. at 102.  Within that disciplined legal framework, the Court addresses Jiles's claims.

### A. Claim 1(a)—Peremptory Strikes

In Claim 1(a), Jiles argues the prosecution used four of its seven peremptory challenges to strike potential African-American jurors in a pattern of disparate treatment that violates *Batson*.   Doc. No. 1, at 16.   "[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson*, 476 U.S. at 89.   The court uses a three-part test in determining a *Batson* claim:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Foster v. Chatman*, 136 S. Ct. 1737, 1747 (2016) (quotation marks and citations omitted). "This court 'appl[ies] harmless error review to any misapplication of *Batson* that results in the seating of a juror who is otherwise qualified for juror service.' An error is harmless if it does not "affect the substantial rights of the parties."") *United States v. Reese*, 611 F. App'x 961, 964 (11th Cir.) (citations omitted), *cert. denied sub nom. Marshall v. United States*, 136 S. Ct. 425, *and cert. denied*, 136 S. Ct. 700 (2015), a*nd cert. denied sub nom. Pettus v. United States*, 136 S. Ct. 1834 (2016); *but see Weaver v. Massachusetts*, 137 S. Ct. 1899, 1911 (2017) (addressing claim of right to public trial and stating in dicta the Court "has granted automatic relief to defendants who prevailed on" a *Batson* error, "though the Court has yet to label those errors structural in express terms").

At trial, the prosecution used its peremptory strikes in the following order: juror 7 (black), juror 40 (white), juror 198 (white), juror 251 (black), juror 312 (black), juror 423

(black), and juror 390 (white).  Doc. No. 8-11, at 3.  It gave the following reasons for striking the African-American jurors:

> juror 7 because she "was failure to appear" as well as a sister who had a criminal record; juror 251 because he had three different misdemeanor charges; juror 312 because he had at least two criminal charges and relatives who had been in prison; and juror 423 because the NCIC report indicated that he had several arrests including one for felony robbery.  The State also explained that it struck the potential white jurors for the following reason: juror 40 because her ex-husband was charged with theft and juror 198 because several of her family members had been arrested, and further, because she was unsatisfied with the way she had been treated by police during a prior incident.

*Id.* at 3-4 (footnote omitted).  No discussion occurred at trial regarding juror 390, though the Court of Criminal Appeals noted that juror 390 indicated that a close family member had arrests for "'DUI, drugs, [and] public drunkenness.'" *Id.* at 4 n.1.  Jiles complained that a white juror with a DUI and a white juror with an unlawful sale of alcohol to minors were not struck, but the trial court ruled that "'a DUI is not in the same category of the reason for striking these others who had criminal records, family members in the penitentiary, et cetera. DUI is not in that category.'" *Id.* at 4.

On direct appeal, the Alabama Court of Criminal Appeals held that the numbers and explanations of strikes "hardly evidence disparate treatment that rises to the level of being entitled to relief under *Batson*." *Id.* at 4-5.  Responding to the complaint that the prosecution "did not eliminate all white venire members of a certain characteristic before exercising the remaining strikes on black venire members," the court pointed out the prosecution "exercised its peremptory challenges in a racially random order" and Jiles provided no law suggesting it violated *Batson* to do so.  *Id.* at 5.  "The fact that the State ran out of strikes

before it could remove every juror who had prior arrests—or had a family member who did—does not establish a *Batson* violation." *Id.* The court held there was not evidence of disparate treatment because "the State struck both black and white venire members due to their criminal records or the criminal records of the juror's family members. . . . [and] where the State strikes both blacks and whites for the same reason, there is no disparate treatment rising to the level of a *Batson* violation." *Id.* at 5 (citations omitted).

The court concludes that Jiles's *Batson* claim is due to be denied. "The reason given for the peremptory strike need not be a good reason," and it can even be an "irrational, silly or superstitious reason, as long as it is not a discriminatory reason." *United States v. Hughes*, 840 F.3d 1368, 1382 (11th Cir. 2016) (quotation marks and citation omitted). Still, "a court may find intent to discriminate when the reason provided for striking a juror applies with equal force to a juror that the same party declined to strike, who is outside the protected group of the stricken juror." *Id.*; *see also Miller-El v. Dretke*, 545 U.S. 231, 241 (2006) ("If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step."). "'The trial judge's decision on [the] ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal.'" *Hughes*, 840 F.3d at 1382 (citation omitted). Here, the prosecutor gave race-neutral reasons and also struck white jurors for the same reasons. The trial court adequately determined there was no purposeful discrimination. *See id.* (a potential juror's "criminal background in a criminal case could well have been a race-neutral, reasonable trial strategy"); *United States v. Foots*, 658 F.

App'x 1010, 1012 (11th Cir. 2016) ("This was a credible basis for excluding her, since it also struck Juror 17, an engineer and the only other juror who expressed similar doubts about non-physical evidence."). Jiles has not shown that the state court decision was contrary to, or an unreasonably application of clearly established federal law, as determined by the United States Supreme Court, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. 2254(d)(1), (2). Jiles's *Batson* claim is due to be denied.

## B. Claim 2—*Edwards v. Arizona*

In Claim 2, Jiles argues the trial court erroneously denied his motion to suppress statements made after he requested a lawyer in violation of *Edwards v. Arizona*. Doc. No. 1, at 17-18. In *Edwards* the Supreme Court recognized that *Miranda v. Arizona*, 384 U.S. 436 (1966), "declared that an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation." *Edwards*, 451 U.S. at 482. The Court held that a defendant "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484-85.

The Court of Criminal Appeals set out the facts regarding Jiles's suppression motion. Doc. No. 8-11, at 6-7. Officers received Jiles after his release from a local hospital for treatment of his gunshot wound. *Id.* at 6. Jiles refused to waive all of his *Miranda* rights and questioning of him ceased. *Id.* According to Detective Mike Myrick,

approximately forty minutes later, an officer approached Myrick and said Jiles wanted to

speak with him.  According to Myrick:

> Jiles asked Myrick if he was going to be charged with an offense and Myrick
> informed him that he had already been charged. Jiles told Myrick, "if you
> don't charge me, I'll give a statement." (R.19). Myrick testified that when he
> informed Jiles that was not possible, Jiles began crying and spontaneously
> started to explain what had happened.

Doc. No. 8-11, at 7.  According to Jiles, the questioning initially ceased but Myrick began

to talk to Jiles about an unrelated case and told Jiles, "'[y]ou tell us what happened, and

we'll give you justifiable homicide.'" *Id.* The trial court denied Jiles's motion to suppress.

*Id.*  The Court of Criminal Appeals held that Myrick's testimony

> indicated that Jiles reinitiated a conversation with him and spontaneously
> volunteered a statement regarding the night's events.  These statements were
> not made in response to any question asked by Detective Myrick after Jiles
> had invoked his right to counsel. . . . [S]pontaneous, unsolicited statements
> fall outside the protection of *Miranda*.  Because Jiles volunteered his
> statements regarding the events surrounding Harris's shooting death, and
> these statements were not made in response to any police interrogation,
> Jiles's statements fall outside the protection of *Miranda*. Accordingly, we
> cannot say that the trial court abused its discretion in denying Jiles's motion
> to suppress these statements.

*Id.* at 11 (alteration added, citations omitted).

Jiles has not rebutted by clear and convincing evidence the presumption of

correctness given to the Alabama state court determinations of fact. *See* 28 U.S.C. §

2254(e)(1). Jiles does not show the decision by the Alabama state court was an

unreasonable determination of the facts in light of the evidence presented at the state court

proceeding.  *See* 28 U.S.C. § 2254(d)(2).  The state court decision plainly comports with

the decision in *Edwards* and in no way is contrary to or an unreasonable application of other federal law.  *See* 28 U.S.C. 2254(d)(1). This claim is therefore due to be dismissed.

## C. Claim 4—"Stand Your Ground" Instruction

Jiles argues that his attorney provided constitutionally ineffective assistance by failing to request an instruction based on Alabama's "stand your ground" defense.  Doc. No. 1, at 18-19.  To demonstrate a claim of ineffective assistance, a petitioner must show that, despite a strong presumption that counsel performed reasonably, counsel performed "below an objective standard of reasonableness," and that the petitioner was prejudiced by the deficiency. *See Strickland v. Washington*, 466 U.S. 668, 687-91, 694 (1984).  Prejudice means "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  In addition, this federal court's § 2254 review under *Strickland* is another step removed from the original analysis, or as the Supreme Court puts it, "doubly deferential." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quotation marks and citation omitted); *Tharpe v. Warden*, 834 F.3d 1323, 1338 (11th Cir. 2016).

About three years before Jiles's trial, Alabama amended its law on self-defense to eliminate the "duty to retreat" for any person who "is in any place where he or she has the right to be." Ala. Code § 13A-3-23(b) (Ala. Code 1975).  The amended section, in full, provides:

> (b) A person who is justified under subsection (a) in using physical force, including deadly physical force, and who is not engaged in an unlawful activity and is in any place where he or she has the right to be has no duty to retreat and has the right to stand his or her ground.

*Id.* The trial court in Jiles's case instructed the jury on self-defense, but it did not include the "stand your ground" language. Doc. No. 8-19, at 4-6 (quoting the full self-defense instruction given to the jury). During postconviction proceedings, Jiles's counsel testified he asked for an incorrect instruction based on the current law, and he would have asked for an instruction that Jiles was in a location he was entitled to be and had no duty to retreat. Doc. No. 8-16, at 115-18, 123. Trial counsel also testified that the prosecution presented an effective closing argument that "Jiles was not in a place he should have been and the fact that he was on bond and that he was in possession of a firearm, that perhaps the recklessness . . . was the fact that Mr. Jiles may have not even been involved in the shooting but just the fact that he was on bond and in possession of a firearm while he was on bond." *Id.* at 127-28.

The Court of Criminal Appeals rejected Jiles's ineffective assistance claim, explaining:

> this court has found no facts which make the giving of an instruction incorporating § 13A-3-23(b) necessary, because there was no issue for the jury to resolve regarding whether Jiles was engaged in unlawful activity, or was in a place where he did not have the right to be. The jury was not instructed on retreat at all, and the jury could not, under the instructions of the court, have considered that retreat, or the lack thereof, was a factor in whether Jiles acted in self-defense.

Doc. No. 8-19, at 6. On appeal Jiles submitted no authority that the stand your ground instruction was required, and the Court of Criminal Appeals held the trial court properly instructed to jury regarding the law that was applicable to Jiles's facts. *Id.* at 6. It held the charge "was a correct statement of the law, and counsel was not ineffective in failing to object to the self defense charge." *Id.* at 6-7.

The state court determined that a stand your ground instruction was unnecessary, that the jury was properly instructed, and that counsel did not perform ineffectively.  After careful review of the record, this court concludes that Jiles has not rebutted by clear and convincing evidence the presumption of correctness given to the Alabama state court determinations of fact.  *See* 28 U.S.C. § 2254(e).  Jiles has not shown the state court rulings on his claim were an unreasonable application of *Strickland* or any other federal law as determined by the United States Supreme Court; and he has not shown the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). Jiles's claim regarding the stand your ground instruction is therefore due to be denied.

## V. EVIDENTIARY HEARING

Jiles requests permission to present new evidence.  Doc. No. 11.  As previously discussed, the evidence cannot form the basis of habeas relief for him.  "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citation omitted).  The Court is not required hold an evidentiary hearing on Jiles's claims because "the record refutes the applicant's factual allegations or otherwise precludes habeas relief."  *Id.*

## VI. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief filed by Petitioner Fredricas Marcaz Jiles be DENIED and DISMISSED with prejudice.

It is further

ORDERED that on or before August 2, 2017, the parties may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities*, Inc., 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 19th day of July, 2017.

/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE